## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The Defendant, **IVAN VICTOR THRANE ("THRANE")**, was the owner and president of Company A, a construction company with an address of P.O. Box 219, Dickerson, Maryland; Company B, a construction company with an address of P.O. Box 219, Dickerson, Maryland; and Company C, a construction company with an address of 5000 Sunnyside Avenue, Suite 301, Beltsville, Maryland (collectively, "the **THRANE** Companies"). Victim Company 1 was a company headquartered in Beltsville, Maryland, that provided construction and design services, primarily to federal government agencies. **Rakesh Kaushal ("Kaushal")** was employed by Victim Company 1 as a Project Manager and, subsequently, as a Project Executive between in and around August 2015 and in and around January 2017.

Between in and around August 2015 and in and around January 2017, **THRANE** conspired with **Kaushal** to defraud Victim Company 1 by submitting false and fraudulent payment requests for work purportedly performed by the **THRANE** Companies. In fact, the **THRANE** Companies had not performed all of the work indicated on the payment requests and, in some cases, had not performed any work on projects for which the **THRANE** companies were requesting payment. Upon receiving payments to the **THRANE** Companies from Victim Company 1, **THRANE** then funneled a portion of those payments to **Kaushal**. For the purpose of executing this scheme to defraud, **THRANE** and **Kaushal** caused interstate wire transmissions. **Kaushal** deposited checks from the **THRANE** Companies into his personal bank accounts, causing the transmission of information by interstate wires for purposes of processing these check payments.

In furtherance of the conspiracy and scheme to defraud, **THRANE** and **Kaushal**, among other things, caused the **THRANE** Companies to submit payment requests to Victim Company 1. **Kaushal** prepared these payment requests and emailed them to **THRANE**. **THRANE**, or another individual at **THRANE**'s request, signed the payment requests on behalf of the **THRANE** Companies. **THRANE** then emailed the signed payment requests to **Kaushal** to request payment from Victim Company 1. **Kaushal**, as Victim Company 1's Project Manager and Project Executive, approved the payment requests, representing that the work related to the requests had been performed, causing Victim Company 1 to pay the **THRANE** Companies. After Victim Company 1 paid the **THRANE** Companies, **THRANE** made payments to **Kaushal**, typically by writing checks from **THRANE** or the **THRANE** Companies to **Kaushal**.

For example, on October 8, 2015, **Kaushal** sent an email, using his personal email account, to **THRANE**, with the subject line "Invoice 2" that read "Sign and return." The email contained an attachment titled "Application and Certificate for Payment," addressed to Victim Company 1 from Company B, that listed a "Current Payment Due" amount of $60,000. An Application and Certificate for Payment to Victim Company 1 from Company B with a "Current Payment Due"

Rev. August 2018

amount of $60,000 was signed by **THRANE** on or about October 9, 2015 and submitted to Victim Company 1. On October 22, 2015, Victim Company 1 issued check number 2261 in the amount of $60,000 payable to Company B. On October 28, 2015, **THRANE** issued check number 1026 from Company A in the amount of $26,900 payable to **Kaushal**.

Similarly, on December 10, 2015, **Kaushal** sent an email, using his personal email address, to **THRANE**, with the subject line "Approved Invoice 4" that read "Please execute this." The email contained an attachment titled "Application and Certificate for Payment," addressed to Victim Company 1 from Company B, that listed a "Current Payment Due" amount of $156,500. On the same day, **THRANE** sent an email to **Kaushal**'s work email address that read, "Rakesh, Attached is our Pay Application No.4 for your review and processing." Attached to this email was a document titled "Application and Certificate for Payment," containing **THRANE**'s signature, that listed a "Current Payment Due" amount of $156,500. On December 17, 2015, Victim Company 1 issued check number 2575 in the amount of $156,500 payable to Company B. On December 21, 2015, **THRANE** issued check number 1030 from Company A in the amount of $72,500 payable to **Kaushal**.

After Victim Company 1 discovered overbilling by the **THRANE** Companies in December 2016, **THRANE** and **Kaushal** attempted to conceal the conspiracy and scheme to defraud. For example, on December 28, 2016, **THRANE** received an email from **Kaushal**, using his work email address, that read in part, "Good Morning Mr. Thrane: I have been informed by our accounting department that mistakenly we have overpaid your company for the MPO Skywalk Project. Can you please verify with your accounting and respond by COB today." Other employees from Victim Company 1 were copied on this email. In fact, **THRANE** and **Kaushal** had communicated prior to this email regarding the discovery of overpayments by Victim Company 1.

**THRANE** and **Kaushal** communicated by email regarding the response to Victim Company 1. At approximately 8:14 a.m. on December 28, 2016, **Kaushal** sent an email, using his personal email address, to **THRANE**, that read in part, "Good Morning Mr. Kaushal: In response to your email of this morning, please allow me to review our records with my accountant. My accountant is off this week. . . . Please rest assured that if there have been any overpayment to us by [Victim Company 1], we will return the overpayment immediately." Approximately ten minutes later, **THRANE** sent an email to **Kaushal**'s work email address, copying other employees from Victim Company 1, that read in part, "Good Morning Mr. Kaushal, In response to your email of this morning, please allow me to review our records with my accountant. My accountant is off this week . . . . Please rest assured that if there has been any overpayment to us by [Victim Company 1], we will return the overpayment immediately." In fact, the **THRANE** Companies did not have an accountant.

After the discovery of the fraudulent scheme, Victim Company 1 initiated civil litigation against **THRANE** and **Kaushal**, and **THRANE** and **Kaushal** coordinated their defense. During the course of this civil litigation, **THRANE** and **Kaushal** falsely asserted that an employee of Victim Company 1 ("Individual A"), on behalf of the owner of Victim Company 1, authorized the **THRANE** Companies to overbill Victim Company 1 and to pay a portion of the overbilled amounts to **Kaushal**. **THRANE** and **Kaushal** falsely asserted that the purpose of this overbilling

was to set aside funds for one of the **THRANE** Companies to purchase Victim Company 1. In fact, Individual A did not start working at Victim Company 1 until after **THRANE** and **Kaushal** had begun submitting false and fraudulent payment requests to Victim Company 1 as part of the fraudulent scheme, and Individual A did not authorize **THRANE** or the **THRANE** Companies to submit false or inflated payment requests to Victim Company 1.

From approximately September 2015 to December 2016, Victim Company 1 paid the **THRANE** Companies approximately $3,294,675.34 as a result of payment requests submitted as part of the conspiracy and scheme to defraud. Upon receipt of these payments from Victim Company 1, **THRANE** issued approximately 34 kickback payments, totaling approximately $1,740,330, in checks written to **Kaushal**. On or about January 3, 2017, after discovering the fraud scheme, Victim Company 1 reversed or voided payments totaling approximately $741,525 to the **THRANE** Companies. **Kaushal** then provided **THRANE** with three checks, all dated January 4, 2017, from **Kaushal** to Company B totaling approximately $370,700.06. Accordingly, the actual or intended loss amount attributable to **THRANE** is more than $1,500,000 but not more than $3,500,000.

SO STIPULATED:

_____
Jessica C. Collins
Gregory D. Bernstein
Assistant United States Attorneys

_____
Ivan Victor Thrane
Defendant

_____
Eric Kirchman, Esq.
Counsel for Defendant